IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-283-D

| | |
|---|---|
| SPECIALIZED LOAN SERVICING, LLC, ) <br> ) <br> Appellant, ) <br> ) <br> v. ) <br> ) <br> JOHN JOSEPH DEVITA, et al. ) <br> ) <br> Appellees. ) | **ORDER** |

On June 15, 2018, Specialized Loan Servicing, LLC ("SLS" or "appellant") filed a notice of appeal from an order of the United States Bankruptcy Court for the Eastern District of North Carolina denying SLS's motion to reconsider [D.E. 1, 1-1]. On August 1, 2018, SLS filed a copy of the bankruptcy record [D.E. 9]. On August 30, 2018, SLS filed a brief in support [D.E. 12]. On October 1, 2018, Deborah Ann Devita and John Joseph Devita (collectively, the "Devitas" or "appellees") responded in opposition [D.E. 13].[1] On October 15, 2018, SLS replied [D.E. 14]. As explained below, the court affirms the bankruptcy court's denial of SLS's motion for reconsideration.

I.

On April 2, 2012, John and Deborah Devita filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code. See [D.E. 12] 8; [D.E. 9-11] ¶ 1; [D.E. 9-1]; [D.E. 9-2]. On September 26, 2012, the United States Bankruptcy Court for the Eastern District of North Carolina ("bankruptcy court") confirmed the Devitas' Chapter 13 Plan. See [D.E. 9-11] ¶ 2; [D.E. 9-2]. The

---

[1] John. F. Logan ("Logan" or "trustee"), the Chapter 13 trustee, is also an appellee but did not file a brief.

bankruptcy court appointed Logan as the Chapter 13 trustee. See [D.E. 12] 8.

The Devitas own real property at 5624 Voorhees Lane, Holly Springs, North Carolina. See id. at 9; [D.E. 9-4] 2. To purchase the property, the Devitas obtained a loan from JP Morgan Chase Bank, N.A. ("Chase"). See [D.E. 9-3]. On August 15, 2012, Chase filed a Proof of Claim that reported a total indebtedness of $172,908.75 and a pre-petition arrearage of $3,838.16. See id. at 1; [D.E. 12] 9.

On August 1, 2014, Chase transferred the loan to SLS. See [D.E. 9-4]; [D.E. 12] 9. A portion of the amount that the Devitas paid under their Chapter 13 Plan each month went towards interest and escrow, and the remainder went towards the unpaid principal balance. See [D.E. 12] 10–12. SLS filed three Notice of Mortgage Payment Changes, which the trustee received. Each notice reflected this division of payment. See id. at 10; [D.E. 9-5, 9-6, 9-7].

On July 7, 2017, the trustee filed a Notice of Final Cure Payment (the "Notice") that advised SLS that the Devitas had completed all payments under their Chapter 13 Plan. See [D.E. 9-8]. The Notice also stated that the trustee had disbursed $62,383.12 to SLS from July 2012 through April 2017. See id. In bolded font, the Notice stated that "as of April 25, 2017 the total amount due on this mortgage was $104,547.51." Id. (emphasis omitted). The trustee also instructed the Devitas to resume direct payment to SLS on May 1, 2017. See id. Finally, the Notice directed SLS to file a statement with the Devitas and the trustee within 21 days stating whether SLS agreed "that the Debtors have paid in full the amount required to cure the default on the claim, and whether the Debtors are otherwise current on all payments." Id.

On July 26, 2017, SLS responded to the Notice and stated that SLS agreed that the Devitas had paid in full the amount required to cure the pre-petition default and that the Devitas had paid all

post-petition amounts due as of that date. See [D.E. 9-9]. SLS did not state whether SLS agreed that the proposed $104,547.51 unpaid principal balance was accurate. See [D.E. 12] 10; [D.E. 9-9].

On July 27, 2017, the trustee moved to declare the mortgage payment current in the bankruptcy court. See [D.E. 9-10]. In his motion, the trustee stated that he requested a detailed payment history from SLS on May 22, 2017 and on June 21, 2017, but SLS did not respond. See id. ¶ 5. The trustee calculated the principal balance by subtracting $68,361.24, which represented amounts dispersed by the trustee for ongoing monthly mortgage payments and pre-petition and administrative arrearages, from $172,908.75, the total indebtedness as of April 2, 2012. See id. ¶ 6. The trustee made this calculation based on documents available to him. See id. ¶¶ 7–8. The trustee also told the bankruptcy court that the Notice had stated a proposed unpaid principal balance of $104,547.51, and that SLS had filed a response "agreeing with the [t]rustee's Notice." Id. ¶¶ 7, 9. In his prayer for relief, the trustee sought a declaration from the bankruptcy court that the unpaid principal balance was $104,547.51. See id. at 2. SLS did not respond to the trustee's motion. See [D.E. 12] 12. On August 23, 2017, the bankruptcy court adopted the trustee's calculations and declared that the "principal amount due and owing to [SLS] as of April 25, 2017, is $104,547.51." [D.E. 9-11] 2.

On or about October 24, 2017, SLS issued a Notice of Default to the Devitas because SLS believed that the Devitas had missed their November 2017 mortgage payment. See [D.E. 9-14] 1–2. On November 15, 2017, the Devitas moved for sanctions against SLS for failure to comply with the bankruptcy court's order of August 23, 2017. See id. This motion alerted SLS to the bankruptcy court's finding that the unpaid principal balance as of April 25, 2017, was $104,547.51.

On February 21, 2018, SLS moved for reconsideration of that finding. See [D.E. 9-20]. SLS argued that it was not aware that it needed to respond to the trustee's proposed unpaid principal

3

balance in the Notice. See id. SLS also argued that the trustee had intentionally applied interest and escrow payments to reduce the unpaid principal balance. See [D.E. 12] 10–12; [D.E. 9-20]. SLS acknowledged that, due to a lack of familiarity with local procedures, it inadvertently did not alert the bankruptcy court to the trustee's alleged erroneous calculation before the court entered the order. See [D.E. 9-20] ¶¶ 8–9. On March 9, 2018, the Devitas responded in opposition. See [D.E. 9-21]. The Devitas argued that bankruptcy court should deny relief because the Notice and motion were properly served on SLS and because SLS regularly participates in bankruptcy cases in this jurisdiction. See [D.E. 9-21] ¶¶ 4–5.

On May 24, 2018, the bankruptcy court held a hearing on SLS's motion for reconsideration. See [D.E. 12] 13–14. At the hearing, SLS's witness testified that he was not aware that the trustee requested detailed payment history from SLS. See id. at 13. The witness also testified that SLS confused the Notice with the trustee's motion. See id. at 13–14. SLS also produced evidence substantiating its claim that the unpaid principal balance as of April 25, 2017, was $151,547.21. See [D.E. 9-23] 2.

On May 31, 2018, the bankruptcy court denied SLS's motion for reconsideration. See id. The court found that it "is undisputed [that] SLS failed to timely object to the . . . Motion in order to dispute the balance due on the note, despite being properly served with notice of the Motion." Id. at 2. On June 14, 2018, SLS appealed to this court. See [D.E. 9-25].

II.

Under 28 U.S.C. § 158(a)(1), district courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy courts. In bankruptcy proceedings, "the concept of finality is more flexibly applied than with regard to district court judgments." Brandt v. Wand Partners, 242 F.3d 6, 13 (1st Cir. 2001). No uniform rule, however, has been developed to determine

4

when an order or judgment is final. See id. An order which ends a discrete judicial unit in the larger case concludes a bankruptcy proceeding and is a final judgment for the purposes of 28 U.S.C. § 158. See In re Computer Learning Centers, Inc., 407 F.3d 656, 660 (4th Cir. 2005). The bankruptcy court's order denying SLS's motion for reconsideration is a final order because it ends a discrete unit of the larger case. Thus, this court has subject-matter jurisdiction to hear this appeal. In doing so, the court may consider the original papers and exhibits, the transcript of proceedings, and the docket. See Fed. R. App. P. 10(a); Union Bank v. Blum, 460 F.2d 197, 202 (9th Cir. 1972); Arcari v. Marder, 225 B.R. 253, 256 (D. Mass. 1998); In re Bartlett, 92 B.R. 142, 143 (E.D.N.C. 1988) ("[I]n reviewing a bankruptcy case on appeal, a district court can consider only that evidence which was presented before the bankruptcy court and made part of the record.").

When sitting in appellate review of a bankruptcy court, this court reviews its conclusions of law de novo and its findings of fact for clear error. See, e.g., Sartin v. Macik, 535 F.3d 284, 287 (4th Cir. 2008); In re White, 487 F.3d 199, 204 (4th Cir. 2007); In re Duncan, 448 F.3d 725, 728 (4th Cir. 2006); In re Official Comm. of Unsecured Creditors for Dornier Aviation (N. Am.), Inc., 453 F.3d 225, 231 (4th Cir. 2006). A district court reviews a bankruptcy court's denial of a Rule 60(b) motion for abuse of discretion. See Aikens v. Ingram, 652 F.3d 496, 501 (4th Cir. 2011) (en banc); In re Carlson, 372 B.R. 32, 33 (B.A.P. 8th Cir. 2007); In re E-Z Serve Convenience Stores, Inc., 318 B.R. 631, 635 (M.D.N.C. 2004); Angell ex rel. Williams v. Echols, No. 7:10-CV-136-D, 2011 WL 12876343, at *4 (E.D.N.C. Mar. 14, 2011) (unpublished). "An abuse of discretion will only be found if the bankruptcy court's judgment was based on clearly erroneous factual findings or on erroneous legal conclusions." In re Carlson, 372 B.R. at 33.

To obtain relief under Federal Rule of Civil Procedure 60(b), a moving party must first demonstrate that its motion is timely, that it has a meritorious claim or defense, that the nonmoving

5

party will not suffer unfair prejudice from setting aside the judgment, and that exceptional circumstances justify relief. See, e.g., Robinson v. Wix Filtrate Corp., 599 F.3d 403, 412 n.12 (4th Cir. 2010); Nat'l Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 264 (4th Cir. 1993). If the moving party does so, then the moving party also must "satisfy one of the six enumerated grounds for relief under Rule 60(b)." Gray, 1 F.3d at 266.

As for the four threshold requirements for relief, the parties dispute whether unfair prejudice to the nonmovant and extraordinary circumstances exist. Compare [D.E. 12] 18–20, with [D.E. 13] 18–19. As for unfair prejudice, there is a risk that the Devitas will suffer unfair prejudice because vacating a court order after the nonmoving party has relied on the court's decision can cause unfair prejudice. See, e.g., Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC, 859 F.3d 295, 300–01 (4th Cir. 2017). Moreover, at the bankruptcy court's hearing, SLS did not offer evidence concerning whether the Devitas would suffer unfair prejudice from setting aside the judgment. Cf. Park Corp. v. Lexington Ins. Co., 812 F.2d 894, 896 (4th Cir. 1987). In response, SLS argues that the Devitas have a contractual obligation to pay the full amount of the mortgage. See [D.E. 12] 18–19.

The court need not resolve the issue of unfair prejudice. Whether the nonmoving party will suffer prejudice is "not controlling." Compton v. Alton S.S. Co., 608 F.2d 96, 102 (4th Cir. 1979).

As for extraordinary circumstances, "[i]n determining whether to [grant a Rule 60(b) motion], the courts must engage in the delicate balancing of the sanctity of final judgments, expressed in the doctrine of res judicata, and the incessant command of the court's conscience that justice be done in light of all the facts." Id.; United States v. Welsh, No. 5:11-HC-2209-D, 2017 WL 7805581, at *10 (E.D.N.C. Mar. 16, 2017) (unpublished), aff'd, 879 F.3d 530 (4th Cir. 2018). Although the bankruptcy court did not explicitly address this factor, it weighs in the Devitas' favor.

6

While SLS will not recoup all of the money it seeks, any loss arises because SLS failed to respond to the Notice and the trustee's motion of July 27, 2017.[2]

Alternatively, even assuming that SLS can meet Rule 60(b)'s threshold requirements, SLS is not entitled to relief under Rule 60(b). See Dowell v. State Farm Fire & Cas. Auto. Ins. Co., 993 F.2d 46, 48 (4th Cir. 1993); Werner v. Carbo, 731 F.2d 204, 207 (4th Cir. 1984). After meeting the threshold requirements, SLS must show that it meets one of the grounds for relief set forth in Rule 60(b). See Fed. R. Civ. P. 60(b)(1)–(6). The bankruptcy court considered and rejected SLS's arguments as to Rule 60(b)(1) and 60(b)(6). See [D.E. 9-23]. SLS now also seeks relief under Rule 60(b)(4).

As for Rule 60(b)(1), the court "may relieve a party . . . from a final judgment, order, or proceeding" for "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The bankruptcy court reasoned that it "is undisputed [that] SLS failed to timely object to the chapter 13 trustee's Motion in order to dispute the balance due on the note, despite being properly served with notice of the Motion." [D.E. 9-23] 2. Although SLS asserts that it was blameless, it does not explain why it failed to object beyond its failure to know local bankruptcy procedures. See [D.E. 12] 21–23. At the bankruptcy court's hearing, SLS did not show that it was "not at fault." Home Port Rentals, Inc. v. Ruben, 957 F.2d 126, 132 (4th Cir. 1992); see, e.g., Jae-Young Lee v. Tae Shin, 231 F. App'x 225, 226 (4th Cir. 2007) (per curiam) (unpublished). Moreover, the fact that SLS has

---

[2] SLS's reliance on Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808 (4th Cir. 1988) (per curiam), is misplaced. In Augusta Fiberglass Coatings, Inc., the United States Court of Appeals for the Fourth Circuit applied the "liberal view of discretionary relief from default judgments." Id. at 811. This case, however, does not involve a default judgment. Rather, SLS is an experienced litigant in our bankruptcy court and actively engaged in the litigation process with the trustee, yet it ignored the trustee's notice of July 7, 2017, and motion of July 27, 2017. These facts do not present "extraordinary circumstances" or otherwise qualify under Rule 60(b)(1), Rule 60(b)(4), or Rule 60(b)(6).

a meritorious claim or defense does not mean its neglect was excusable. See, e.g., Park Corp., 812 F.2d at 896–97. Because SLS failed to show that it was not at fault in failing to respond, the bankruptcy court did not abuse its discretion in finding that Rule 60(b)(1) does not provide relief to SLS.

As for Rule 60(b)(4), the Fourth Circuit construes Rule 60(b)(4) narrowly. See Welsh, 879 F.3d at 533–34; Wendt v. Leonard, 431 F.3d 410, 412–13 (4th Cir. 2005); Kan. City S. Ry. v. Great Lakes Carbon Corp., 624 F.2d 822, 825 n.5 (8th Cir. 1980). "An order is void only if the court lacked personal or subject[-]matter jurisdiction or acted contrary to due process of law." Wells Fargo Bank, N.A., 859 F.3d at 299 (quotation omitted); see Wendt, 431 F.3d at 413. "Only when the jurisdictional error is egregious will courts treat the judgment as void." Wendt, 431 F.3d at 413 (quotation omitted). Such a "rare instance of a clear usurpation of power" occurs only if there is "a total want of jurisdiction" or "no arguable basis on which [the bankruptcy court] could have rested a finding that it had jurisdiction." Id.; see Welsh, 879 F.3d at 533–34.

SLS argues that the judgment is void because the trustee's motion did not provide adequate notice that it would affect the unpaid principal balance, the extent of a lien should be determined in an adversarial proceeding, and the bankruptcy court lacked subject-matter jurisdiction. See [D.E. 12] 23–28. SLS did not articulate the first two arguments in the bankruptcy court and did not preserve those issues for appeal. See Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999); see also Robinson v. Comm'r, 583 F. App'x 68, 69 (4th Cir. 2014) (per curiam) (unpublished); United States v. Myers, 581 F. App'x 171, 173 (4th Cir. 2014) (per curiam) (unpublished); United States v. Johnson, 557 F. App'x 240, 243 (4th Cir. 2014) (per curiam) (unpublished); Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 607 (4th Cir. 2009).

8

Alternatively, as for adequate notice, although the trustee did not explicitly instruct SLS to respond to the proposed unpaid principal balance, the trustee provided SLS with notice—in bolded font—that he calculated the unpaid principal balance to be $104,547.51. See [D.E. 9-8]. The trustee served a copy of his motion on SLS before filing it with the bankruptcy court. See [D.E. 9-10] 2. The trustee informed SLS that it could object to the motion and seek a hearing if it wished. See id. at 5–6. Accordingly, the trustee's actions provided sufficient notice to SLS to satisfy due process.

SLS's argument that the bankruptcy court's order is void because the Federal Rules of Bankruptcy Procedure require an adversarial proceeding to determine the extent of a lien also fails. The Fourth Circuit recently rejected an analogous argument because such requirements are procedural and not jurisdictional rules. See Wells Fargo Bank, N.A., 859 F.3d at 302; cf. United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 271–72 (2010); Kontrick v. Ryan, 540 U.S. 443, 453–54 (2004). Because "Congress vested the bankruptcy courts with broad jurisdiction to determine 'the validity, extent, or priority' of" SLS's lien, "any failure to follow the procedural rule here does not rise to the level of a jurisdictional flaw." Wells Fargo Bank, N.A., 859 F.3d at 302 (quoting 28 U.S.C. § 157(b)(2)(K)). Accordingly, even if SLS preserved this argument for appeal, it fails to provide a basis for relief under Rule 60(b)(4).

Additionally, the bankruptcy court did not act with a "total want of jurisdiction" because bankruptcy courts regularly grant motions to deem mortgage payments current. Wendt, 431 F.3d at 413. "[D]eterminations of the validity, extent, or priority of liens" also are core proceedings. 28 U.S.C. § 157(b)(2)(K). Moreover, SLS implicitly consented to adjudication in the bankruptcy court by appearing and providing evidence in support of its case. See Wellness Int'l Network, Ltd. v. Sharif, 135 S. Ct. 1932, 1942–46 (2015); MDC Innovations, LLC v. Hall, 726 F. App'x 168, 172

9

(4th Cir. 2018) (per curiam) (unpublished); Houck v. Substitute Tr. Servs., Inc., 791 F.3d 473, 482–83 (4th Cir. 2015). Accordingly, this argument fails to provide a basis for relief.

As for Rule 60(b)(6), SLS argues that it would be unfair to deny relief to SLS and that the local bankruptcy rule authorizing the bankruptcy court to determine the unpaid principal balance is substantive and conflicts with the Federal Rules of Bankruptcy Procedure if it lacks a good-faith element. See [D.E. 12] 28–31. Although SLS cited Rule 60(b)(6) in its motion for reconsideration, it did not raise these specific arguments below and has waived them on appeal. See Edwards, 178 F.3d at 241 n.6; see also Robinson, 583 F. App'x at 69; Myers, 581 F. App'x at 173; Johnson, 557 F. App'x at 243; Wahi, 562 F.3d at 607.

Alternatively, the court rejects SLS's arguments. Rule 60(b)(6) is a "catchall provision" that allows a "court to grant relief for any reason," albeit limited by binding precedent, if appropriate to accomplish justice. Dowell, 993 F.2d at 48; see Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863–64 (1988); Ackermann v. United States, 340 U.S. 193, 199–202 (1950); Klapprott v. United States, 335 U.S. 601, 614–15 (1949); Aikens, 652 F.3d at 500–01; Gray, 1 F.3d at 266. A motion under Rule 60(b)(6) "may not be granted absent extraordinary circumstances." Reid v. Angelone, 369 F.3d 363, 370 (4th Cir. 2004) (quotation omitted), abrogated on other grounds by United States v. McRae, 793 F.3d 392 (4th Cir. 2015); Wadley v. Equifax Info. Servs., LLC, 296 F. App'x 366, 369 (4th Cir. 2008) (per curiam) (unpublished). Such circumstances are those "that create a substantial danger that the underlying judgment was unjust." Murchison v. Astrue, 466 F. App'x 225, 229 (4th Cir. 2012) (per curiam) (unpublished); Margoles v. Johns, 798 F.2d 1069, 1073 (7th Cir. 1986). "[E]xtreme and undue hardship in an unusual situation where principles of equity mandate relief" qualifies as "extraordinary circumstances." In re Reiman, 431 B.R. 901, 910 (E.D. Mich. 2010) (quotations and emphasis omitted).

As for whether extraordinary circumstances exist, the trustee calculated the unpaid principal balance using available documents, contacted SLS for more documentation twice, and provided notice of the proposed unpaid principal balance three times. As SLS acknowledges, it failed to correct the unpaid principal balance or to alert the bankruptcy court to the issue because its counsel lacked familiarity with local procedures, and SLS did not know it needed to respond to that aspect of the trustee's notice. See [D.E. 9-21] 2. In short, this case does not present circumstances of extreme and undue hardship in an unusual situation where principles of equity mandate relief. See In re Reiman, 431 B.R. at 910.

As for SLS's argument that the relevant local bankruptcy rule is invalid, the rule states:

> All motions to deem a Mortgage Loan to be current or for a determination of final cure pursuant to Fed. R. Bankr. P. 3002.1(h) must contain a statement that all Mortgage Payments and other permissible fees, expenses or charges accruing on the Mortgage Loan from the petition date through the date of the motion or other date specified therein have been made, set forth the total amount due on the Mortgage Loan as of a specific date identified in the motion, and be verified by the Debtor, as appropriate.

Local Bankr. R. 3070-2(e)(4). SLS argues that the rule is substantive, not procedural, and conflicts with Rule 3002.1(h) of the Federal Rules of Bankruptcy. See [D.E. 12] 30–31. Rule 3002.1(h) provides that, upon motion by a debtor or Chapter 13 trustee, the bankruptcy court "shall, after notice and hearing, determine whether the debtor has cured the default and paid all required postpetition amounts." Fed. R. Bankr. P. 3002.1(h).

Congress delegated authority to the United States Supreme Court to promulgate bankruptcy rules that govern "the forms of process, writs, pleadings, and motions, and . . . practice and procedure." 28 U.S.C. § 2075. Such rules "shall not abridge, enlarge, or modify any substantive right." Id. In turn, the Supreme Court has authorized federal district courts to "make and amend rules governing practice and procedure in all cases and proceedings within the district court's

11

bankruptcy jurisdiction which are consistent with—but not duplicative of—Acts of Congress." Fed. R. Bankr. P. 9029(a)(1); see In re Ayodele, 590 B.R. 342, 346 (Bankr. E.D.N.C. 2018). The district courts "may authorize the bankruptcy judges of the district . . . to make and amend rules of practice and procedure which are consistent with—but not duplicative of—Acts of Congress." Fed. R. Bankr. P. 9029(a)(1); see In re Ayodele, 590 B.R. at 346. A local rule of bankruptcy procedure cannot conflict with the Federal Bankruptcy Code. See Fed. R. Bankr. P. 9029(a)(1); No v. Gorman, 891 F.3d 138, 141 (4th Cir. 2018). Notably, the Bankruptcy Court for the Eastern District of North Carolina recently upheld the general scheme of Local Bankruptcy Rule 3070-2 under this rule-making framework. See In re Ayodele, 590 B.R. at 346–50.

As for whether Local Bankruptcy Rule 3070-2 conflicts with Rule 3002.1(h) of the Federal Rules of Bankruptcy Procedure, Rule 3002.1(h) provides "a procedure for the judicial resolution of any disputes that may arise about payment of a claim secured by the debtor's principal residence." Fed. R. Bankr. P. 3002.1(h) advisory committee's note. The rule allows bankruptcy courts to determine "whether any default has been cured and whether any other non-current obligations remain outstanding." Id. "Rule 3002.1(h) sets up a process by which a bankruptcy court, after the debtor has completed all payments to the [C]hapter 13 trustee, may determine the amount necessary to cure the mortgage debt." In re Payer, No. 10-33656HRT, 2016 WL 5390116, at *4 (Bankr. D. Colo. May 5, 2016) (unpublished); see In re Diggins, 561 B.R. 782, 786–87 (Bankr. D. Colo. 2016). Local Bankruptcy Rule 3070-2(e)(4) comports with the purpose and text of Rule 3002.1(h) because it sets procedures directed towards determining the "amount necessary to cure the mortgage debt," i.e., the unpaid principal balance on the mortgage. In re Payer, 2016 WL 5390116, at *4. Accordingly, the court rejects SLS's argument that Local Bankruptcy Rule 3070-2(e)(4) conflicts with the Federal Rules of Bankruptcy Procedure.

As for SLS's argument that the local rule is substantive, parties making this argument face a "heavy burden." In re Am. Eagle Mfg., Inc., 231 B.R. 320, 332 (B.A.P. 9th Cir. 1999); In re Hill, 811 F.2d 484, 487 (9th Cir. 1987); see In re Walat, 87 B.R. 408, 411 (Bankr. E.D. Va. 1988). A rule is procedural when it governs the "judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for [violation] of them." Hanna v. Plumer, 380 U.S. 460, 464 (1965); see Associated Dry Goods Corp. v. EEOC, 720 F.2d 804, 809 (4th Cir. 1983). A rule is not substantive because some applications of the rule affect substantive rights in some circumstances. See In re Hill, 811 F.2d at 487. Local Bankruptcy Rule 3070-2(e)(4) is procedural because it specifies the contents of a certain kind of motion. See Local Bankruptcy Rule 3070-2(e)(4); cf. 28 U.S.C. § 2075 (delegating authority to promulgate rules that govern the "forms of . . . motions"). The "actual function and effect" of the rule is procedural, even if some applications affect substantive rights. Associated Dry Goods Corp., 720 F.2d at 809. Accordingly, the bankruptcy court did not abuse its discretion in denying relief under Rule 60(b)(6).

III.

In sum, the court AFFIRMS the bankruptcy court's order denying SLS's motion for reconsideration and DISMISSES the appeal [D.E. 1]. The clerk shall close the case.

SO ORDERED. This 14 day of March 2019.

*J. Dever*

JAMES C. DEVER III
United States District Judge

13